# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:

**DANIEL J. POTEREK** individually and on behalf of all others similarly situated,

      Plaintiff,

v.

**NAVIENT CORPORATION** and **NAVIENT SOLUTIONS, INC.**,

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff DANIEL J. POTEREK ("**Mr. Poterek**"), individually and on behalf of all others similarly situated, through the undersigned counsel, hereby files his Complaint against Defendants NAVIENT CORPORATION and NAVIENT SOLUTIONS, INC. (collectively, "**Navient**" and/or the "**Defendants**"), and alleges as follows:

## NATURE OF THE ACTION

Defendants utilize a loan repayment system where student loans accrue interest based on the principal amount of the outstanding loan. Therefore, as an individual makes deliberate payments to reduce the principal amount of the outstanding student loan, there is less principal to accrue interest. As such, over the life of each student loan, the student loan debtor will pay less interest as he or she decreases his or her principal balance.

Accordingly, many student loan debtors intentionally make monthly payments over the requested amount so as to reduce the principal amount of the outstanding student loan. However, applying these partial pre-payments to the outstanding principal balance is the most costly practice for student loan servicers, including Defendants. When student loan debtors decrease the principal amount of their student loans more quickly than scheduled, the loan servicers make less money in accrued interest – the main source of revenue for student loan servicers like Defendants.

To prevent this loss of profit, Defendants routinely engage in unfair, deceptive, and unlawful practices. In short, Defendants have created a system, implemented practices, and designed policies to apply student loan debtors' intentional, partial pre-payments in a way most beneficial to themselves – against future interest payments and purported fees, rather than the reduction of a student loan's outstanding principal balance.

Through this Complaint, Plaintiff seeks declaratory and injunctive relief, as well as compensation, on his own behalf and on behalf of a class and subclass of those similarly situated, for the violation of various laws, including but not limited to, the unfair, deceptive, and unlawful acts and practices of Defendants.

Plaintiff and all others similarly situated have been damaged as a direct and proximate result of Defendants' willful and intentionally deceptive conduct, warranting punitive damages for Defendants' irreprehensible behavior, and injunctive relief to prevent Defendants from continuing to misapply intentional pre-payments made to reduce the principal amount of a student loan.

## PARTIES

1. Mr. Poterek is a citizen of the State of Florida, and he resides in the jurisdiction of the Southern District of Florida..

2. Navient Corporation is a publicly-traded Delaware corporation, trading on the NASDAQ stock exchange under ticker symbol "NAVI." Navient's principal place of business is in Wilmington, Delaware. Navient Corporation may be served though its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

3. Navient Solutions, Inc., formerly known as Sallie Mae, Inc., is a Delaware corporation with its principal place of business in Reston, Virginia. Navient Solutions, Inc. may be served though its registered agent Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808.

4. There has been significant overlap between the corporate governance and management of Navient Corporation and Navient Solutions, Inc. Specifically, many of the directors and officers of Navient Solutions, Inc. have also been directors or officers of Navient Corporation. For example, as of 2014, John Remondi served as President and Chief Executive Officer for both Navient Corporation and Navient Solutions, Inc.; John Kane served as Chief Operating Officer for both Navient Corporation and Navient Solutions, Inc.; Somsak Chivavibul served as Chief Financial Officer for both Navient Corporation and Navient Solutions, Inc.; Timothy Hynes served as Chief Risk Officer for both Navient Corporation and Navient Solutions, Inc.; and Stephen O'Connell served as Senior Vice President and Treasurer for both Navient Corporation and Navient Solutions, Inc.

5. Following a corporate reorganization in 2014, Navient Corporation was the successor to SLM Corporation and Navient, LLC. As part of this reorganization, Navient Corporation assumed certain liabilities related to the servicing and collection activities of SLM Corporation, Navient, LLC, and their subsidiaries. Among the liabilities assumed by Navient Corporation are all of the pre-reorganization servicing and collection conduct described in this Complaint.

6. Navient is the largest student loan servicer in the United States. Navient services the loans of more than 12 million borrowers, including over 6 million customer accounts under a contract with the U.S. Department of Education, and more than $300 billion in federal and private student loans.

7. Navient's principal responsibilities as a servicer include managing borrowers' accounts; processing monthly payments; assisting borrowers to learn about, enroll in, and remain in alternative repayment plans; and communicating directly with borrowers about the repayment of their loans.

8. In public statements, including annual 10-K filings with the U.S. Securities and Exchange Commission, Navient Corporation (including its predecessor SLM Corporation) has boasted about its capabilities with respect to student loan servicing and collection, including helping consumers navigate the path to financial success and select the appropriate payment plan for their circumstances. Navient Corporation has also indicated that it is responsible for overseeing the strategic direction and business goals of its subsidiaries. For instance, Navient Corporation's 2015 10-K filing includes the following statements:

> • "Navient [Corporation] is the nation's leading loan management, servicing and asset recovery company, committed to helping customers navigate the

- path to financial success. Servicing more than $300 billion in education loans, Navient [Corporation] supports the educational and economic achievements of more than 12 million customers."

- "Navient [Corporation] services loans for more than 12 million … customers, including 6.3 million customers whose accounts are serviced under Navient [Corporation]'s contract with ED. We help our customers navigate the path to financial success through proactive outreach and emphasis on identifying the payment plan that best fits their individual budgets and financial goals."

- "The Navient [Corporation] board of directors and its standing committees oversee our strategic direction, including setting our risk management philosophy, tolerance and parameters; and establishing procedures for assessing the risks our businesses face as well as the risk management practices our management team develops and implements."

- "Each business area within our organization is primarily responsible for managing its specific risks following processes and procedures developed in collaboration with our executive management team and internal risk management partners."

9. Navient Corporation owns or leases the offices used by Navient Solutions, Inc.; has responsibility for the hiring of employees for Navient Solutions, Inc.; and manages all compliance auditing for Navient Solutions, Inc.

10. Navient Corporation consented to, has knowledge of, has materially participated in, and/or has controlled the activities of Navient Solutions, Inc. with respect to the conduct alleged in this Complaint.

11. Navient Corporation is liable for the wrongful acts of its subsidiary-agents.

12. The acts of the Defendants were conducted in concert pursuant to an express or implied agreement amongst themselves to act in this collective manner. All Defendants are therefore jointly and severally liable for the acts complained of herein.

## JURISDICTION AND VENUE

13. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

14. Subject matter jurisdiction is also invoked pursuant to 28 U.S.C. § 1332(d)(2) based on Plaintiff and Defendants diversity of citizenship, and the amount in controversy exceeding $5,000,000.00.

15. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

16. This Court has personal jurisdiction over the Defendants because Defendants regularly and systematically conduct business in this District, including, at minimum, entering into contracts in this District, collecting student loan payments from this District, and deliberately misapplying collected student loan payments from student loan debtors residing in this District.

17. Venue is proper in this District by reason of 28 U.S.C. § 1391(b) and 28 U.S.C. § 1391(c), because Defendants have and continue to enter into contracts in this District and collect student loan payments from this District.

## FACTUAL ALLEGATIONS

18. Defendants' have a strong financial interest in preventing student loan debtors from paying down the outstanding principal balance on their student loans, as the interest payments Defendants' collect is based on the outstanding principal balance of such loans.

19. Defendants utilize a system and operate under practices which intentionally misapply student loan payments.

20.     Defendants' goal in taking a systematic, intentional, and malicious approach to servicing student loan debtors' loans is to prevent student loan debtors from paying down loan principal, such that the maximum amount of interest on each loan serviced will accrue. Ultimately, Defendants attempt to prevent student loan debtors from saving money, as every dollar and cent saved by a student loan debtor is money lost for Defendants.

21.     In sum, Defendants have constructed an opaque, vague, and intentionally confusing payment application system that deliberately attempts to thwart intentional, pre-payment of student loans by student loan debtors. Defendants' payment application system applies intentional, partial pre-payments against future interest payments and purported fees, rather than the reduction of a student loan's outstanding principal balance.

22.     Under the Defendants' unfair, deceptive, and unlawful practices, student loan debtors intentional, partial pre-payments are not paying down loan principal, rather, Defendants' are applying such intentional, partial pre-payments against future interest payments and purported fees. As a result, student loan debtors' unpaid principal balance actually increases over time – meaning student loan debtors will pay more in interest over the life of the loan, thereby, generating larger revenues and profits for Defendants.

23.     Mr. Poterek has made numerous intentional, partial pre-payments; however, Defendants' used these intentional, partial pre-payments against future interest payments and purported fees, rather than the reduction of Mr. Poterek's outstanding principal balance.

24.     Mr. Poterek, and all other similarly situated student loan debtors, are penalized by Defendants actions and loan repayment system, as the misapplication of intentional, partial pre-

payments slows the repayment of principal which in turn causes more interest to accrue on the student loan.

25.     Defendants' deliberate misapplication of intentional, partial pre-payments serves as a way for Defendants to prevent Mr. Poterek, and all other similarly situated student loan debtors, from paying down outstanding principal balances, which, in turn, protects Defendants from potential revenue and profit losses.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and classes of persons similarly situated for declaratory, injunctive, and monetary relief, and defined as:

   a. Nationwide Misapplication Class: All individuals currently residing in the United States or who entered into student loan contracts in the United States, that have made at least one intentional, partial pre-payment on any private loan serviced by Defendants, and, such intentional, partial pre-payment was incorrectly applied against future interest payments and purported fees, and who are not bound by an arbitration agreement.
   b. Florida Misapplication Subclass: All individuals currently residing in Florida or who entered into student loan contracts in Florida, that have made at least one intentional, partial pre-payment on any private loan serviced by Defendants, and, such intentional, partial pre-payment was incorrectly applied against future interest payments and purported fees, and who are not bound by an arbitration agreement.

Specifically excluded from the Nationwide Misapplication Class and the Florida Misapplication Subclass (collectively the "Classes") are: (a) any officers, directors, or employees of Defendants or any of their subsidiaries; (b) any judge assigned to hear this case (or spouse or family member of any assigned judge); (c) any employee of the Court; and, (d) any juror selected to hear this case.

28. Mr. Poterek asserts claims against Defendants, individually and on behalf of all Classes and members of such Classes for violations of the law as set forth below.

29. The members of the Classes are ascertainable from objective criteria.

30. If necessary to preserve the case as a class action, the Court itself can redefine the Classes, create additional classes or sub-classes, or both.

31. The requirements of Rule 23(a) are satisfied for the proposed class because the members of the proposed class are so numerous and geographically dispersed that joinder of all its members is impracticable.

32. Although the exact number and identity of each class member is unknown at this time, there are believed to be thousands of members in each of the Classes. Therefore, the "numerosity" requirement of Rule 23(a)(1) is met.

33. The commonality requirement of Rule 23(a)(2) is satisfied because there are questions of law or fact common to Mr. Poterek and all of the members in each of the Classes. Among those common questions of law or fact are:

   a. whether Defendants, through their acts or omissions, participated in unfair debt collection practices by misapplying intentional, partial pre-payments;
   b. whether Defendants, through their acts or omissions, engaged in false, deceptive, or misleading representations or means in connection with the collection debts;
   c. whether Defendants employed unfair or deceptive means in misapplying intentional, partial pre-payments;
   d. whether Defendants impermissibly shifted loan interest to loan principal;
   e. whether Defendants impermissibly charged improper fees and/or fee amounts;
   f. whether Defendants actions were willful, intentional, and taken in bad faith;
   g. whether Mr. Poterek and the members of the Classes have sustained or continue to sustain damages as a result of Defendants' wrongful conduct, and, if so, the proper measure and appropriate formula to be applied in determining damages for the injuries sustained;
   h. whether Mr. Poterek and the members of the Classes are entitled to compensatory, consequential, exemplary, and punitive damages; and

      i. whether Mr. Poterek and the members of the Classes are entitled to declaratory, injunctive, or other equitable relief.

34. Mr. Poterek's claims are typical of the claims of the Classes that he seeks to represent, as described above, because they arise from the same course of conduct by Defendants and are based on the same legal theories. Further, Mr. Poterek seeks the same form of relief for himself and the Classes. Therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

35. Because his claims are typical of the Classes that he seeks to represent, Mr. Poterek has every incentive to pursue those claims vigorously. Mr. Poterek has no conflicts with, or interests antagonistic to the Classes, that may not be alleviated with proper notice. Mr. Poterek is committed to the vigorous prosecution of this action.

36. Mr. Poterek's counsel satisfies the requirements of Rule 23(g) to serve as counsel for the Class. Mr. Poterek's counsel (a) has identified and thoroughly investigated the claims set forth herein, (b) has been involved in complex litigation; (c) has extensive knowledge of the applicable law; and (d) has or will have the resources to commit to the vigorous prosecution of this action on behalf of the Classes. Accordingly, Mr. Poterek, as the representative for the Classes, satisfies the adequacy of representation requirement set forth in Rule 23(a)(4).

37. In addition, this action meets the requirements of Rule 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to Mr. Poterek and others similarly situated, making final injunctive or corresponding declaratory relief with respect to the Classes appropriate.

38. This action also meets the requirements of Rule 23(b)(3). Common questions of law or fact, including those set forth above, exist as to the claims of all members of the Classes,

and predominate over questions affecting only individual class members, and a class action is superior – if not the only method – for the fair and efficient adjudication of this controversy.

39. Class treatment will permit large numbers of similarly situated student loan debtors to prosecute their respective claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.

40. This action is manageable as a class action. Notice may be provided to members of the proposed class by first-class mail and through the alternative means, including electronic mail (email), internet postings including banner ads, distribution through social media, including sponsored postings on Facebook and Twitter, and by publication. Thus, the superiority and manageability requirements of Rule 23(b)(3) are satisfied.

### **COUNT I – VIOLATION OF DELAWARE CONSUMER FRAUD ACT**
*[ON BEHALF OF THE NATIONWIDE MISAPPLICATION CLASS]*

41. Plaintiff adopts and re-alleges the allegations contained in Paragraphs 1 – 40 as if more fully set forth herein.

42. Pursuant to § 2511 of the Delaware Consumer Fraud Act, "merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate, or services."

43. Defendants' services are "merchandise" as defined by the Delaware Consumer Fraud Act.

44. According to § 2512 of the Delaware Consumer Fraud Act:

> The purpose of this subchapter shall be to protect consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within this State. It is the intent of the General Assembly that such practices be swiftly stopped and that this

subchapter shall be liberally construed and applied to promote its underlying purposes and policies.

45. Additionally, pursuant to § 2513(a) of the Delaware Consumer Fraud Act:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice. . .

46. Defendants engaged in numerous unfair acts and practices in the servicing of Mr. Poterek's and Nationwide Misapplication Class members' loans, including:

   a. Reducing the monthly payment amount due if the consumer/debtor pays additional principal over what is the minimum amount due for his/her loan, despite not reducing the principal amount of the student loan.
   b. Applying intentional, partial pre-payments against future interest payments and purported fees, rather than the reduction of a student loan's outstanding principal balance
   c. Applying intentional, partial pre-payments incorrectly, so that student loan debtors are prevented from paying down their principal balance early and saving money, and ensuring that Defendants collect as much interest as possible;
   d. Employing an antiquated, confusing, and misleading online payment system to provide information to consumers/debtors, so as to prevent consumers/debtors from being able to understand their loan payments and applications;
   e. Confirming both the amount of payments made and the loans to which payments are made, only to later misapply the loan payments;
   f. Intending to use deception, fraud, false pretenses, false promises, and misrepresentation in confirming payments, such that consumers will rely on such confirmation and will thereby be misled as to how payments are being applied; and
   g. Refusing to apply payments in the manner directed by the consumer/debtor

47. Defendants' practices, as set forth above, were unfair in that:

   a. The practices were immoral, oppressive, and unscrupulous in that they imposed upon student loan debtors with no meaningful choice, imposed an unreasonable burden on student loan debtors, and were so oppressive as to

leave student loan debtors with little alternative but to submit to the practices. Student loan debtors had no control over the Defendants' acts; and,

b. Student loan debtors cannot reasonably avoid the injury caused by Defendants', as Defendants are in ultimate control of student loan payment processing.

48. Defendants' unfair practices and conduct were directed toward Mr. Poterek and other Class members.

49. Defendants' intended for student loan debtors, including Mr. Poterek and Class members, to rely on their acts and practices in applying student loan payments as correct, even though Defendants were deliberately misapplying student loan debtors' intentional, partial pre-payments.

50. Defendants' also intended for student loan debtors, including Mr. Poterek and Class members, to rely on their loan billing statements, emails, and website as correct, even though the billing statements were often incorrect, confusing, or intentionally misleading.

51. Defendants' unfair and deceptive practices occurred during the course of conduct involving trade or commerce, specifically the collection of student loan debts.

52. Upon information and belief, Defendants' manage and execute their loan payment application system within the State of Delaware and collect payments in the State of Delaware.

53. Mr. Poterek and Class members incurred damages due to the misapplication of intentional, partial pre-payments.

54. Mr. Poterek's and Class members's damages were directly and proximately caused by Defendants' unfair acts and practices.

55. Defendants' conduct was addressed to the market generally and otherwise implicates consumer protection concerns and, therefore, a consumer nexus exists in that: (i)

Defendants' acts and practices in collecting student loans, misapplying loan payments, and misrepresenting how payments were collected, and how payments would be applied; and, (ii) Defendants' acts and practices otherwise implicate consumer protection concerns including, but not limited to, promoting fair and upright business practices.

56. Mr. Poterek is authorized to bring a private action under the Delaware Consumer Fraud Act.

57. Defendants' conduct was willful and intentional and done with malice or reckless indifference to the rights of others. Punitive damages are thus warranted.

**WHEREFORE**, Mr. Poterek, on behalf of himself and the Nationwide Misapplication Class, prays this Court enter judgment against the Defendants named in this Court for: (a) actual and compensatory damages; (b) punitive damages; (c) consequential damages; (d) pre-judgment and post-judgment interest; (d) attorneys' fees and costs; (e) declaratory judgment that Defendants' acts, omissions, and practices violate Delaware Consumer Fraud Act; (f) injunctive relief from further violations; and (g) any other relief the Court deems just and proper.

### COUNT II – VIOLATION OF FLORIDA DECEPTIVE UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.201)
*[ON BEHALF OF THE FLORIDA MISAPPLICATION SUBCLASS]*

58. Plaintiff adopts and re-alleges the allegations contained in Paragraphs 1 – 40 as if more fully set forth herein.

59. This is a claim for violations of Florida's Deceptive and Unfair Trade Practices Act "FDUPTA"), Fla. Stat. § 501.201 – 501.213

60. Defendants' services are "trade or commerce" as defined by FDUPTA.

61. According to Fla. Stat. §§ 501.204(1):

> Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

62. Defendants engaged in numerous unfair acts and practices in the servicing of Mr. Poterek's and Florida's Misapplication Subclass members' loans, including:

   a. Reducing the monthly payment amount due if the consumer/debtor pays additional principal over what is the minimum amount due for his/her loan, despite not reducing the principal amount of the student loan.
   b. Applying intentional, partial pre-payments against future interest payments and purported fees, rather than the reduction of a student loan's outstanding principal balance
   c. Applying intentional, partial pre-payments incorrectly, so that student loan debtors are prevented from paying down their principal balance early and saving money, and ensuring that Defendants collect as much interest as possible;
   d. Employing an antiquated, confusing, and misleading online payment system to provide information to consumers/debtors, so as to prevent consumers/debtors from being able to understand their loan payments and applications;
   e. Confirming both the amount of payments made and the loans to which payments are made, only to later misapply the loan payments;
   f. Intending to use deception, fraud, false pretenses, false promises, and misrepresentation in confirming payments, such that consumers will rely on such confirmation and will thereby be misled as to how payments are being applied; and,
   g. Refusing to apply payments in the manner directed by the consumer/debtor

63. Defendants' practices, as set forth above, were unfair in that:

   a. The practices were immoral, oppressive, and unscrupulous in that they imposed upon student loan debtors with no meaningful choice, imposed an unreasonable burden on student loan debtors, and were so oppressive as to leave student loan debtors with little alternative but to submit to the practices. Student loan debtors had no control over the Defendants' acts; and,
   b. Student loan debtors cannot reasonably avoid the injury caused by Defendants', as Defendants are in ultimate control of student loan payment processing.

64. Defendants' unfair practices and conduct were directed toward Mr. Poterek and other Class members.

65. Defendants' intended for student loan debtors, including Mr. Poterek and Class members, to rely on their acts and practices in applying student loan payments as correct, even though Defendants were deliberately misapplying student loan debtors' intentional, partial pre-payments.

66. Defendants' also intended for student loan debtors, including Mr. Poterek and Class members, to rely on their loan billing statements, emails, and website as correct, even though the billing statements were often incorrect, confusing, or intentionally misleading.

67. Defendants' unfair and deceptive practices occurred during the course of conduct involving trade or commerce, specifically the collection of student loan debts.

68. Upon information and belief, Defendants' collect payments in the State of Florida.

69. Mr. Poterek and Class members incurred damages due to the misapplication of intentional, partial pre-payments.

70. Mr. Poterek's and Class members's damages were directly and proximately caused by Defendants' unfair acts and practices.

71. Defendants' conduct was addressed to the market generally and otherwise implicates consumer protection concerns and, therefore, a consumer nexus exists in that: (i) Defendants' acts and practices in collecting student loans, misapplying loan payments, and misrepresenting how payments were collected, and how payments would be applied; and, (ii) Defendants' acts and practices otherwise implicate consumer protection concerns including, but not limited to, promoting fair and upright business practices.

72. Mr. Poterek is authorized to bring a private action under FDUPTA.

73. Defendants' conduct was willful and intentional and done with malice or reckless indifference to the rights of others. Punitive damages are thus warranted.

74. As a direct and proximate result of Defendants' unfair and deceptive acts, Mr. Poterek and Class members have suffered damages

**WHEREFORE**, Mr. Poterek, on behalf of himself and the Florida Misapplication Subclass, prays this Court enter judgment against the Defendants named in this Court for: (a) actual and compensatory damages; (b) punitive damages; (c) consequential damages; (d) pre-judgment and post-judgment interest; (d) attorneys' fees and costs; (e) declaratory judgment that Defendants' acts, omissions, and practices violate FDUPTA; (f) injunctive relief from further violations; and (g) any other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that this matter be tried before a jury on all issues triable thereto.

Respectfully submitted,

By: /s/ Daniel J. Poterek        F.B.N. 85204
**THE BURTON FIRM**, **P.A**.
DANIEL J. POTEREK, ESQ.
MARC A. BURTON, ESQ.
RICHARD J. BURTON, ESQ.
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
P: 305-705-0888 | F: 305-705-0008
pleadings@theburtonfirm.com
dpoterek@theburtonfirm.com

## SERVICE LIST

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:

**THE BURTON FIRM, P.A.**
DANIEL J. POTEREK, ESQ.
MARC A. BURTON, ESQ.
RICHARD J. BURTON, ESQ.
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
P: 305-705-0888 | F: 305-705-0008
pleadings@theburtonfirm.com
dpoterek@theburtonfirm.com
mburton@theburtonfirm.com
rb@theburtonfirm.com